**EXHIBIT 24**

Message

**From**: George Marcus [GJM@mcm-law.com]
**Sent**: 9/4/2012 2:07:30 PM
**To**: jgeismar@nhdlaw.com
**CC**: libmmg@yahoo.com; Joe Bedard [joe.bedard@mozido.com]
**Subject**: Revised Note Purchase Agreement
**Attachments**: Note Purchase Agreement.Marcotte.1m. rev.9.4.12.docx

John, a couple of things. Per our conversation, I revised the Note Purchase Agreement (see Section 5) to add a covenant regarding use of Note proceeds and to obligate the Issuer to convert its own notes, or otherwise acquire its own securities, in order to fund the conversion obligation to your client. Attached is the Marcotte Note Purchase Agreement marked to show the changes. Of course, if you approve, both sets will have these changes.

Let me know if you have any comments on these proposed changes.

Also, I spoke with Mike. We first point out that there is anti-dilution protection provided in the Note itself for recapitalizations, splits, and other structural events. As you point out, there is no anti-dilution protection for sales of equity at a later date. Mike does not have this protection either, and as such, he does not believe he can offer it to your clients.

To be sure, if further equity has to be raised, it will be dilutive on a percentage basis, but it is clearly in Mike's and everyone's interest to make sure that further equity raises add value, and hence would not be dilutive on a value basis. While this cannot be guaranteed, there is at least a commonality of interest with Mike and every other investor.

Let me know if you have further questions. Thx. Geo.



George J. Marcus, Esq.
Marcus, Clegg & Mistretta, P.A.
One Canal Plaza-Suite 600
Portland, Maine 04101-4035
tel (207) 828-8000
cell (207) 838-0230
fax (207) 773-3210
gmarcus@mcm-law.com
www.mcm-law.com

**Visit our new website: www.mcm-law.com**.

**Confidentiality Notice**: The materials in this electronic mail transmission (including all attachments) are private and confidential and are the property of the sender. The information contained in the material is privileged and intended only for the use of the named addressee(s). If you are not the intended addressee, be advised that any unauthorized disclosure, copying, distribution or the taking of any action in reliance on the contents of this material is strictly prohibited. If you have received this electronic mail transmission in error, then please immediately notify the sender by telephone at (207) 828-8000 or send an electronic message to firm@mcm-law.com, and thereafter, destroy the original transmission immediately.

# BRENTWOOD FINANCIAL, LLC

## NOTE PURCHASE AGREEMENT

This **NOTE PURCHASE AGREEMENT**, dated as of August __, 2012 (this "**Agreement**"), is entered into by and among **BRENTWOOD FINANCIAL, LLC**, a Florida limited liability company (the "**Issuer**"), with its principal executive office at 5373 Isleworth CC Drive Windermere, FL 34786 (the "**Principal Office**"), and Ronald Marcotte and or nominee ("**Purchaser**").

## RECITALS

Purchaser is willing to purchase from the Issuer, and the Issuer is willing to sell to Purchaser, on the terms and conditions set forth herein, a Convertible Promissory Note, in the form of Exhibit A hereto, in the original principal amount of One Million Dollars ($1,000,000), or so much thereof as has been advanced (the "**Note**").

## AGREEMENT

NOW THEREFORE, in consideration of the foregoing, and the representations, warranties, and conditions set forth below, the parties hereto, intending to be legally bound, hereby agree as follows:

1. **Definitions.** In addition to the other terms defined herein, the following terms used herein shall have the meanings herein specified:

"**Affiliate**" shall mean, as to any Person, any other Person that directly, or indirectly through one or more intermediaries, Controls, is Controlled by, or is under common Control with, such Person. For the purposes of this definition, "Control" shall mean the power, directly or indirectly, either to (i) vote 5% or more of the securities having ordinary voting power for the election of directors (or persons performing similar functions) of a Person or (ii) direct or cause the direction of the management and policies of a Person, whether through the ability to exercise voting power, by control or otherwise. The terms "Control", "Controlled by", and "under common Control with" have the meanings correlative thereto.

"**Indebtedness**" of any Person shall mean, without duplication (i) all obligations of such Person for borrowed money, (ii) all obligations of such Person evidenced by bonds, debentures, notes or other similar instruments, (iii) all obligations of such Person in respect of the deferred purchase price of property or services (other than trade payables incurred in the ordinary course of business; provided, that trade payables overdue by more than 120 days shall be included in this definition except to the extent that any of such trade payables are being disputed in good faith and by appropriate measures), (iv) all obligations of such Person under any conditional sale or other title retention agreement(s) relating to property acquired by such Person, (v) all capital lease obligations of such Person, (vi) all obligations, contingent or otherwise, of such Person in respect of letters of credit, acceptances or similar extensions of credit, (vii) all guarantees of such Person of the type of Indebtedness described in clauses (i) through (vi) above, (viii) all Indebtedness of a third party secured

2193157v4

CONFIDENTIAL TREATMENT REQUESTED
EXEMPT FROM FOIA

In-Re-Mozido (B3004)_SEC_010_013184

by any lien or security interest on property owned by such Person, whether or not such Indebtedness has been assumed by such Person, and (ix) all obligations of such Person, contingent or otherwise, to purchase, redeem, retire or otherwise acquire for value any capital stock or other equity interests of such Person.  The Indebtedness of any Person shall include the Indebtedness of any partnership or joint venture in which such Person is a general partner or a joint venturer, except to the extent that the terms of such Indebtedness provide that such Person is not liable therefor.

(a) **"Transaction Documents"** means the Note Purchase Agreement, the Note, and each related agreement, document and instrument executed in connection herewith or therewith from time to time.

Capitalized terms not otherwise defined herein shall have the meaning set forth in the form of Note (as defined below) attached hereto as Exhibit A.

2. **The Note**.

(a) Issuance of the Note.  At the Closing (as defined below) the Issuer agrees to issue and sell to Purchaser, and, subject to all of the terms and conditions hereof, Purchaser agrees to purchase, the Note.

(b) Delivery.  The sale and purchase of the Note shall take place at a closing (the "**Closing**") to be held at such place and time as the Issuer and Purchaser may determine (the "**Closing Date**").  At the Closing, the Issuer will deliver the Note to the Purchaser, against receipt by the Issuer of the purchase price of One Million Dollars ($1,000,000) (the "**Purchase Price**").  The Purchase Price shall be paid as follows:  The sum of $1,000,000 shall be paid on or before August 31, 2012.

(c) Use of Proceeds.  The proceeds of the sale and issuance of the Note will be used in accordance with the provisions of Section 5(a) of this Agreement.

(d) Payments.  The Issuer will make all cash payments due under the Note in immediately available funds by 2:00 P.M. (prevailing Eastern Time) on the date such payment is due in such manner as Purchaser may direct in writing from time to time.

3. **Representations and Warranties of the Issuer**.  The Issuer represents and warrants to Purchaser that:

(a) Due Organization, Qualification, etc.  The Issuer is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Florida.  The Issuer (i) has the power and authority to own, lease and operate its properties and carry on its business as now conducted and to execute, deliver and perform its obligations under this Agreement and each of the other Transaction Documents to which it is a party; and (ii) is duly qualified, licensed to do business and in good standing in each jurisdiction in which it is required by law to qualify or become licensed to do business.  The Issuer has caused to be delivered to Purchaser correct and complete copies of its Organization Documents (as defined below), which documents reflect all amendments made thereto at any time prior to the Closing Date.  The Issuer is not in default under or in violation of any provision of its Organizational Documents.

CONFIDENTIAL TREATMENT REQUESTED
EXEMPT FROM FOIA

In-Re-Mozido (B3004)_SEC_010_013185

(b) <u>Authority</u>. The execution, delivery and performance by the Issuer of each of the Transaction Documents to which it is a party, and the consummation of the transactions contemplated thereby (i) are within the power of the Issuer and (ii) have been duly authorized by all necessary company action on the part of the Issuer.

(c) <u>Enforceability</u>. Each Transaction Document executed, or to be executed, by the Issuer has been, or will be, duly executed and delivered by each Issuer and constitutes a legal, valid and binding obligation of the Issuer, enforceable against the Issuer in accordance with its terms, except as limited by bankruptcy, insolvency or other laws of general application relating to or affecting the enforcement of creditors' rights generally and general principles of equity.

(d) <u>Non-Contravention</u>. The execution and delivery by the Issuer of the Transaction Documents to which it is a party and the performance and consummation of the transactions contemplated thereby do not and will not: (i) violate the Issuer's certificate of formation or operating agreement (collectively, the "**Organizational Documents**") or any judgment, order, writ, decree, statute, rule or regulation applicable to the Issuer; (ii) violate any provision of, or result in the breach or the acceleration of, or entitle any other Person to accelerate (whether after the giving of notice or lapse of time or both), any mortgage, indenture, agreement, instrument or contract to which the Issuer is a party or by which it is bound; or (iii) result in the creation or imposition of any lien upon any property, asset or revenue of the Issuer or the suspension, revocation, impairment, forfeiture, or nonrenewal of any material permit, license, authorization or approval applicable to the Issuer, its business or operations, or any of its assets or properties.

(e) <u>Approvals</u>. Except as set forth in the Organizational Documents, no consent, approval, order or authorization of, or registration, declaration or filing with, any governmental authority or other Person (including, without limitation, the stockholders or other equity holders of any Person) is required in connection with the execution, delivery and performance of the Transaction Documents executed by the Issuer and the performance and consummation of the transactions contemplated thereby.

(f) <u>Compliance with Laws</u>. The Issuer and each of its directors and officers have complied with and are in compliance, in all material respects, with all laws, statutes, rules, regulations, judgments, or orders which are applicable to it and its business, and within the last two (2) years, no claims have been filed against any such Persons alleging any such violations and no such Person has received any written notice of any such violations.

(g) <u>Litigation</u>. There is no pending or, to the best knowledge of the Issuer, threatened action, suit, proceeding or investigation before any court, governmental agency or body, or arbitrator having jurisdiction over the Issuer, or any of their Affiliates, that could affect the execution by the Issuer or the performance by the Issuer of its obligations under the Transaction Documents. Except as set forth on Schedule 3(i) attached hereto, there is no pending, or to the best of knowledge of the Issuer, basis for a threatened action, suit, proceeding or investigation before any court, governmental agency or body, or arbitrator having jurisdiction over the Issuer or any of their respective Affiliates.

- 3 -

CONFIDENTIAL TREATMENT REQUESTED
EXEMPT FROM FOIA

In-Re-Mozido (B3004)_SEC_010_013186

(h)     Stop Transfer.  The Note and the securities into which the Note is convertible (collectively, the "Securities"), when issued, will be restricted securities.  The Issuer will not issue any stop transfer order or other order impending the sale, resale or delivery of any of the Securities, except as may be required by any applicable federal or state securities laws and unless contemporaneous notice of such instruction is given to Purchaser.

(i)     No Integrated Offering.  Neither the Issuer nor any of its Affiliates, nor any Person acting on their behalf, has directly or indirectly made any offers or sales of any security or solicited any offers to buy any security under circumstances that would cause the offer of the Securities pursuant to this Agreement to be integrated with prior offerings by the Issuer for purposes of the Securities Act or any applicable stockholder approval provisions.  The Issuer will not take any action or steps that would cause the offer or issuance of the Securities to be integrated with other offerings.  The Issuer will not conduct any offering other than the transactions contemplated hereby that will be integrated with the offer or issuance of the Securities.

(j)     No General Solicitation; Private Placement.  Neither the Issuer, the Guarantor nor, to its knowledge, any Person acting on behalf of the Issuer has engaged in any form of general solicitation or general advertising (within the meaning of Regulation D under the Securities Act) in connection with the offer or sale of the Securities.  Assuming the accuracy of the Purchaser's representations and warranties set forth in Section 4(b), no registration under the Securities Act is required for the offer and sale of the Securities by the Issuer to the Purchaser under the Transaction Documents.

(k)     Acknowledgement Regarding Purchaser's Purchase of the Securities.  The Issuer acknowledges and agrees that the Purchaser is acting solely in the capacity of an arm's length purchaser with respect to this Agreement, the Transaction Documents and the transactions contemplated hereby and thereby.  The Issuer further acknowledges that the Purchaser is not acting as a financial advisor or fiduciary of the Issuer (or in any similar capacity) with respect to the Agreement, the other Transaction Documents and the transactions contemplated hereby and thereby and any advice given by the Purchaser or any of their respective representative or agents in connection with this Agreement, the other Transaction Documents and the transactions contemplated hereby and thereby is merely incidental to Purchaser's purchase of the Securities.  The Issuer further represents to the Purchaser that the Issuer's decision to enter into this Agreement has been based solely on the independent evaluation by the Issuer and its representatives.

(l)     Investment Company.  the Issuer is not an "investment company" within the meaning of the Investment Company Act of 1940, as amended.

(m)     Solvency.  Based on the financial condition of the Issuer as of the Closing Date (and assuming that the Closing shall have occurred), (i) the Issuer's saleable value of its assets exceeds the amount that will be required to be paid on or in respect of the Issuer's existing debts and other liabilities (including known contingent liabilities) as they mature, (ii) the Issuer's assets do not constitute unreasonably small capital to carry on its business for the current fiscal year as now conducted and as proposed to be conducted including its capital needs taking into account the particular capital requirements of the business conducted by the Issuer, and projected capital requirements and capital availability thereof, and (iii) the current cash flow of the Issuer, together

CONFIDENTIAL TREATMENT REQUESTED
EXEMPT FROM FOIA

In-Re-Mozido (B3004)_SEC_010_013187

with the proceeds the Issuer would receive, were it to liquidate all of its assets, after taking into account all anticipated uses of the cash, would be sufficient to pay all amounts on or in respect of its debt when such amounts are required to be paid. The Issuer will not incur debts beyond its ability to pay such debts as they mature (taking into account the timing and amounts of cash to be payable on or in respect of its debt).

(n) <u>Regulatory Permits</u>. The Issuer possesses all material certificates, authorizations and permits issued by the appropriate federal, state or foreign regulatory authorities necessary to conduct its business, and the Issuer has received any notice of proceedings relating to the revocation or modification of any such certificate, authorization or permit.

(o) <u>Tax Status</u>. The Issuer has made and filed through the date hereof (and has valid extensions for applicable period thereafter) all federal and state income and all other tax returns, reports, and declarations required by any jurisdiction to which it is subject and (unless and only to the extent that the Issuer has set aside on its books provisions reasonably adequate for the payment of all unpaid and unreported taxes) has paid all taxes and other governmental assessments and charges that are material in amount, shown or determined to be due on such returns, reports and declarations, except those being contested in good faith and has set aside on its books provision reasonably adequate for the payment of all taxes for periods subsequent to the periods to which such returns, reports or declarations apply. There are no unpaid taxes claimed to be due by the taxing authority of any jurisdiction, and the managers and officers of the Issuer know of no basis for any such claim.

(p) <u>Assets</u>. The Issuer has good and marketable title to, or a valid leasehold interest in, the properties and assets used by it or located on its premises, free and clear of all liens and encumbrances. The Issuer neither owns, nor has ever owned, any real property, and the Issuer is not a party to any agreement or option to purchase any real property or interest therein.

(q) <u>Disclosure</u>. All information furnished to the Purchaser or the Purchaser's counsel by or on behalf of the Obligors in connection with the transactions contemplated hereby or thereby, when taken as a whole, does not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements herein or therein not misleading. There is no fact of which the Issuer is aware that has not been disclosed to the Purchaser and that is or could reasonably be expected to have a Material Adverse Effect.

**4. Representations and Warranties of Purchaser**. The Purchaser represents and warrants to the Issuer upon the acquisition of the Note as follows:

(a) <u>Binding Obligation</u>. The Purchaser has full legal capacity, power and authority to execute and deliver this Agreement and to perform the Purchaser's obligations hereunder. Each of this Agreement and the Note issued to the Purchaser is a valid and binding obligation of the Purchaser, enforceable in accordance with its terms, except as limited by bankruptcy, insolvency or other laws of general application relating to or affecting the enforcement of creditors' rights generally and general principles of equity.

(b) <u>Securities Law Compliance</u>. The Purchaser has been advised that the Securities have not been registered under the Securities Act, or any state securities laws and, therefore, cannot

- 5 -

CONFIDENTIAL TREATMENT REQUESTED
EXEMPT FROM FOIA

In-Re-Mozido (B3004)_SEC_010_013188

be resold unless they are registered under the Securities Act and applicable state securities laws or unless an exemption from such registration requirements is available. The Purchaser is aware that the Issuer is under no obligation to effect any such registration with respect to the Securities or to file for or comply with any exemption from registration. The Purchaser is purchasing the Securities for the Purchaser's own account for investment, not as a nominee or agent, and not with a view to, or for resale in connection with, the distribution thereof.

(c) The Purchaser acknowledges that it can bear the economic risk and complete loss of its investment in the Securities and has such knowledge and experience in financial or business matters that it is capable of evaluating the merits and risks of the investment contemplated hereby.

(d) The Purchaser has had an opportunity to receive all information related to the Company requested by it and to ask questions of and receive answers from the Company regarding the Company, its business and the terms and conditions of the offering of the Securities. Neither such inquiries nor any other due diligence investigation conducted by the Purchaser shall modify, limit or otherwise affect the Purchaser's right to rely on the Issuer's representations and warranties contained in this Agreement.

(e) The Purchaser understands that the Securities are characterized as "restricted securities" under the U.S. federal securities laws inasmuch as they are being acquired from the Company in a transaction not involving a public offering and that under such laws and applicable regulations such securities may be resold without registration under the 1933 Act only in certain limited circumstances.

(f) It is understood that, except as provided below, certificates and other documents evidencing the Securities may bear the following or any similar legend:

(a) "THE UNITS REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED. THESE UNITS MAY NOT BE SOLD, OFFERED FOR SALE, PLEDGED OR HYPOTHECATED IN THE ABSENCE OF (1) COMPLIANCE WITH THE TERMS OF THE OPERATING AGREEMENT OF THE ISSUER OF THE UNITS AND (2) AN EFFECTIVE REGISTRATION STATEMENT UNDER SUCH SECURITIES ACT OR ANY APPLICABLE STATE SECURITIES LAW OR AN OPINION OF COUNSEL REASONABLY SATISFACTORY TO THE COMPANY THAT SUCH REGISTRATION IS NOT REQUIRED."

(b) If required by the authorities of any state in connection with the issuance of sale of the Securities, the legend required by such state authority.

(g) <u>Accredited Purchaser</u>. The Purchaser is an accredited Purchaser as defined in Rule 501(a) of Regulation D, as amended, under the 1933 Act.

(h) The Purchaser did not learn of the investment in the Securities as a result of any general solicitation or general advertising.

- 6 -

(i) No Person will have, as a result of the transactions contemplated by the Transaction Documents, any valid right, interest or claim against or upon the Issuer, or any Affiliate of the Issuer for any commission, fee or other compensation pursuant to any agreement, arrangement or understanding entered into by or on behalf of such Purchaser.

(j) The Purchaser understands that the Securities are being offered and sold in reliance upon specific exemptions from the registration requirements of the 1933 Act, the rules and regulations promulgated thereunder and state securities laws and that the Company is relying upon the truth and accuracy of, and the Purchaser's compliance with, the representations, warranties, agreements, acknowledgments and understandings of the Purchaser set forth herein in order to determine the availability of such exemptions and the eligibility of the Purchaser to acquire the Securities.

(k) The Purchaser understands that nothing in the Agreement or any other materials presented to the Purchaser in connection with the purchase and sale of the Securities constitutes legal, tax or investment advice. The Purchaser has consulted such legal, tax and investment advisors as it, in its sole discretion, has deemed necessary or appropriate in connection with its purchase of the Securities.

(l) The Purchaser understands that its investment in the Securities involves a significant degree of risk, including a risk of total loss of the Purchaser's investment, and the Purchaser has full cognizance of and understands all of the risk factors related to the Purchaser's purchase of the Securities. The Purchaser understands that the value of the Securities can fluctuate and that no representation is being made as to the future value of the Securities.

(m) The Purchaser understands that no United States federal or state agency or any other government or governmental agency has passed upon or made any recommendation or endorsement of the Securities.

(n) The Purchaser has such knowledge and experience in financial and business matters that the Purchaser is capable of evaluating the merits and risks of such investment, is able to incur a complete loss of such investment and is able to bear the economic risk of such investment for an indefinite period of time. The Purchaser is an "accredited Purchaser" as such term is defined in Rule 501 of Regulation D under the Securities Act.

5. **Covenants of the Issuer**. The Issuer, jointly and severally, hereby covenants that from and after the date of this Agreement and so long as any of the obligations under the Note are outstanding:

(a) Use of Proceeds. The Issuer will use the proceeds of the sale of the Note for the purpose of investment in convertible promissory notes and/or Preferred membership units of Mozido, LLC, and for any other lawful purpose determined appropriate by the Issuer. No portion of the proceeds of the sale of the Note shall be used by the Issuer to purchase or carry "margin stock", as such term is defined in Regulation U of the Board of Governors of the Federal Reserve, or otherwise in violation of such Regulation U or other applicable law. The Obligors will supply to the Purchaser

- 7 -

such additional information and documents that the Purchaser may reasonably request with respect to the use of proceeds and will permit the Purchaser to have access to any and all records and information and personnel as the Purchaser deems necessary to verify such use of proceeds.

(b)  Conversion Rights of Purchaser<u>.  Upon the proper exercise by Purchaser of its right to convert the Note to be issued pursuant to this Agreement, Issuer covenants to acquire, by exercise of its own conversion rights, or by any other necessary means, a sufficient number of Preferred Units of Mozido, LLC in order to satisfy its conversion obligations pursuant to the Note.</u>

(c)  Mergers, Acquisitions, Transfers of Assets, Etc.  The Issuer will not, nor will it permit any Subsidiary to, merge into or consolidate into any other Person, or permit any other Person to merge into or consolidate with it, or sell, lease, transfer or otherwise dispose of (in a single transaction or a series of transactions) all or substantially all of its assets (in each case, whether now owned or hereafter acquired) or any of the membership interests or other equity of any of its Subsidiaries (in each case, whether now owned or hereafter acquired) or wind up, liquidate or dissolve (including any declaration of bankruptcy), or create, incur or suffer to exist any liens, security interests or other encumbrances on any of its assets (other than in favor of the Purchaser), or enter into any other recapitalization, joint venture or business combination, or sell, transfer or acquire any assets

(d)  Organizational Documents.  The Issuer will not amend, modify or restate, or permit the amendment, modification or restatement of, its Organizational Documents.

(e)  Board of Directors and Management.  the Issuer will not, nor will it permit any Subsidiary to, cause or permit:

(i)  the number of members of its Board of Directors to be increased or decreased, or create or permit to exist any committees having authority delegated by the Board of Directors;

(ii)  any change in the officers of the Issuer, including the addition or removal of any office or officer; or

(f)  Notice of Events of Default.  The Issuer shall immediately provide written notice to the Purchaser of the occurrence of any Event of Default, or any event or condition which, with the passage of time or giving of notice or both, would constitute an Event of Default.

(g)  Reporting.  The Obligors shall cause to be prepared and delivered the following to the Purchaser:

(i)  As soon as available and in any event no later than sixty (60) days after the end of each fiscal year of the Issuer, unaudited financial statements for the Issuer (which shall be prepared in accordance with generally accepted accounting principles, other than the omission of footnotes and normal year end adjustments), including a balance sheet and statements of income and cash flows showing the cash distributed in such fiscal year and the balance of each of the Issuer's member's capital account at the end of such fiscal year and the manner of its calculation.  If requested

CONFIDENTIAL TREATMENT REQUESTED
EXEMPT FROM FOIA

In-Re-Mozido (B3004)_SEC_010_013191

by the Purchaser, the Obligors shall cause such financial statements to be audited by an accounting firm reasonably acceptable to the Purchaser.

(ii) As soon as available and in any event no later than thirty (30) days after the end of each fiscal quarter of the Issuer, unaudited financial statements for the Issuer (which shall be prepared in accordance with generally accepted accounting principles, other than the omission of footnotes and normal year end adjustments), including a balance sheet and statements of income and cash flows showing the cash distributed in such fiscal quarter and the balance of each of the Issuer's member's capital account at the end of such fiscal quarter and the manner of its calculation.

In addition, the Issuer shall, promptly following the Purchaser's request, provide the Purchaser with such records, reports and other information that the Purchaser may resononably request from time to time.

**6. Conditions to Closing by the Purchaser**. The Purchaser's obligations at the Closing are subject to the fulfillment, on or prior to the Closing Date, of all of the following conditions, any of which may be waived in whole or in part by the Purchaser in its sole discretion:

(a) Representations and Warranties. The representations and warranties made by the Obligors in Section 3 hereof shall be true and correct on the Closing Date.

(b) Governmental Approvals and Filings. Except for any notices required or permitted to be filed after the Closing Date with certain federal and state securities commissions, the Obligors shall have obtained all governmental approvals required in connection with the lawful sale and issuance of the Note.

(c) Legal Requirements. At the Closing, the sale and issuance by the Issuer, and the purchase by the Purchaser, of the Note shall be legally permitted by all laws and regulations to which the Purchaser or either of the Obligors are subject.

(d) Proceedings and Documents. All corporate and other proceedings in connection with the transactions contemplated at the Closing and all documents and instruments incident to such transactions shall be reasonably satisfactory in form and substance to the Purchaser, and the Obligors shall provide a legal opinion of counsel as to the due authorization of this Agreement and the other Transaction Documents.

(e) Transaction Documents. The Purchaser shall have received executed copies of this Agreement and the other Transaction Documents.

**7. Conditions to Obligations of the Issuer**. The Issuer's obligation to issue and sell the Note at the Closing is subject to the fulfillment, on or prior to the Closing Date, of the following conditions, any of which may be waived in whole or in part by the Issuer:

(a) Representations and Warranties. The representations and warranties made by the Purchaser in Section 4 hereof shall be true and correct.

CONFIDENTIAL TREATMENT REQUESTED
EXEMPT FROM FOIA

In-Re-Mozido (B3004)_SEC_010_013192

(b)     <u>Governmental Approvals and Filings</u>.  Except for any notices required or permitted to be filed after the Closing Date with certain federal and state securities commissions, the Issuer shall have obtained all governmental approvals required in connection with the lawful sale and issuance of the Note.

(c)     <u>Legal Requirements</u>.  At the Closing, the sale and issuance by the Issuer, and the purchase by the Purchaser, of the Note shall be legally permitted by all laws and regulations to which the Purchaser or the Issuer are subject.

(d)     <u>Purchase Price</u>.  The Purchaser shall have delivered to Issuer the Purchase Price in respect of the Note being purchased when and as the Purchaser is required to pay the Purchase Price hereunder.

(e)     <u>Proceedings and Documents</u>. All corporate and other proceedings in connection with the transactions contemplated at the Closing and all documents and instruments incident to such transactions shall be reasonably satisfactory in form and substance to the Issuer, and the Purchaser shall provide a legal opinion of counsel as to the due authorization of this Agreement and the other Transaction Documents

(f)     <u>Transaction Documents</u>.  The Issuer shall have received executed copies of this Agreement and the other Transaction Documents.

**8. <u>Miscellaneous.</u>**

(a)     <u>Waivers and Amendments</u>. Any provision of this Agreement may be amended, waived or modified only upon the written consent of the Obligors and the Purchaser.

(b)     <u>Governing Law; Jurisdiction</u>.

(i)     This Agreement and all actions arising out of or in connection with this Agreement shall be governed by and construed in accordance with the laws of the State of Florida, without regard to the conflicts of law provisions of the State of Florida or of any other state.

(ii)     Each party to this Agreement irrevocably consents to the service of process in the manner provided for notices in <u>Section 8(h)</u>.  Nothing in this Agreement or in any other Transaction Document will affect the right of any party hereto to serve process in any other manner permitted by law.

(c)     <u>Survival</u>.  The representations, warranties, covenants and agreements made herein shall survive the execution and delivery of this Agreement.

(d)     <u>Successors and Assigns</u>.  The rights and obligations of the Obligors and the Purchaser shall be binding upon and benefit the respective successors, assigns, heirs, administrators and transferees of such parties.

(e)     <u>Registration, Transfer and Replacement of the Note</u>. The Issuer will keep, at its Principal Office, books for the registration and registration of transfer of the Note.  Prior to

CONFIDENTIAL TREATMENT REQUESTED
EXEMPT FROM FOIA

In-Re-Mozido (B3004)_SEC_010_013193

presentation of the Note for registration of transfer, the Issuer shall treat the Person in whose name such Note is registered as the owner and holder of such Note for all purposes whatsoever, whether or not such Note shall be overdue, and the Issuer shall not be affected by notice to the contrary.  Subject to any restrictions on or conditions to transfer set forth in the Note, the holder of the Note, at his/her/its option, may in person or by duly authorized attorney surrender the same for exchange at the Principal Office, and promptly thereafter and at the Issuer's expense, except as provided below, receive in exchange therefor one or more new Note(s), which shall be for the same principal amount as the then unpaid principal amount of the Note so surrendered and shall be dated the date to which interest shall have been paid on the Note so surrendered or, if no interest shall have yet been so paid, dated the date of the Note so surrendered, and registered in the name of such Person or Persons as shall have been designated in writing by such holder or its attorney.  Upon receipt by the Issuer of evidence reasonably satisfactory to it of the ownership of and the loss, theft, destruction or mutilation of the Note and (i) in the case of loss, theft or destruction, of indemnity reasonably satisfactory to it; or (ii) in the case of mutilation, upon surrender thereof, the Issuer, at its expense, will execute and deliver in lieu thereof a new Note executed in the same manner as the Note being replaced, and in the case of a lost, stolen or destroyed Note, in the same principal amount as the unpaid principal amount of such Note and dated the date to which interest shall have been paid on such Note or, if no interest shall have yet been so paid, dated the date of such Note.

(f) <u>Assignment by the Issuer</u>.  The rights, interests and obligations hereunder may not be assigned, by operation of law or otherwise, in whole or in part, by the Issuer without the prior written consent of the Purchaser.  Purchaser may assign its interests and obligations hereunder.

(g) <u>Entire Agreement</u>.  This Agreement, together with the other Transaction Documents, constitutes and contains the entire agreement among the Obligors and the Purchaser and supersedes any and all prior agreements, negotiations, correspondence, understandings and communications between the parties, whether written or oral, respecting the subject matter hereof.

(h) <u>Notices</u>.  All notices, requests, demands, consents, instructions or other communications required or permitted hereunder shall be in writing and faxed, mailed or delivered to each party as follows: (i) if to the Purchaser, at the Purchaser's address or facsimile number set forth on the signature page below or at such other address as the Purchaser shall have furnished the Issuer in writing, or (ii) if to the Issuer, at the Principal Office, or at such other address or facsimile number as the Issuer shall have furnished to the Purchaser in writing.  All such notices and communications will be deemed effectively given the earlier of (i) when received, (ii) when delivered personally, (iii) one Business Day after being delivered by facsimile (with receipt of appropriate confirmation), (iv) one Business Day after being deposited with an overnight courier service of recognized standing or (v) four days after being deposited in the U.S. mail, first class with postage prepaid.

(i) <u>Expenses</u>.  Each party shall pay the fees and expenses of its respective counsel with respect to the negotiation, execution, delivery, performance and enforcement of the Agreement and the Transaction Documents.

(j) <u>Further Assurances</u>.  Upon the reasonable request of the Purchaser or any Obligor, the Purchaser or the Obligor, as the case may be, agrees to take any and all actions,

- 11 -

CONFIDENTIAL TREATMENT REQUESTED
EXEMPT FROM FOIA

In-Re-Mozido (B3004)_SEC_010_013194

including, without limitation, the execution of certificates, documents or instruments, necessary or appropriate to give effect to the transactions contemplated by this Agreement

(k) <u>Remedies</u>. In addition to the remedies set forth in the Note, upon the occurrence or existence of any Event of Default, the Purchaser may exercise any other right, power or remedy granted to it by the Transaction Documents or otherwise permitted to it by law, either by suit in equity or by action at law, or both. The Issuer acknowledges that violation of any one or more of the terms of this Agreement or any other Transaction Document would immeasurably and irreparably damage the Purchaser, and, accordingly, the Issuer agrees that for any violation or threatened violation of any of such terms, the Purchaser shall, in addition to any other rights and remedies available to it, at law or otherwise (including, without limitation, the recovery of damages from the Obligors), be entitled to specific performance and an injunction to be issued by any court of competent jurisdiction enjoining and restraining the Obligors, or either of them, from committing any violation or threatened violation of the terms hereof.

(l) <u>Waivers</u>. No waiver, termination or discharge of this Agreement, or any of the terms or provisions hereof, shall be binding upon either party hereto unless set forth in writing and signed by the party to be bound thereby. Any waiver of any term or condition shall not be construed as a waiver of any subsequent breach or a subsequent waiver of the same term or condition, or a waiver of any term or condition of this Agreement. No failure to exercise, or delay in exercising, any right, remedy, power or privilege arising from this Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

(m) <u>Severability of this Agreement</u>. If any provision of this Agreement shall be judicially determined to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

(n) <u>Titles and Subtitles</u>. The titles and subtitles used in this Agreement are used for convenience only and are not to be considered in construing or interpreting this Agreement.

(o) <u>Counterparts</u>. This Agreement may be executed in any number of counterparts (including by way of electronic transmission), each of which shall be an original, but all of which together shall be deemed to constitute one instrument.

(p) <u>Time Is of the Essence</u>. Time is of the essence of this Agreement, and of each provision hereof.

(q) **WAIVER OF JURY TRIAL.** EACH PARTY HERETO IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF THIS AGREEMENT OR ANY OTHER TRANSACTION DOCUMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY

CONFIDENTIAL TREATMENT REQUESTED
EXEMPT FROM FOIA

In-Re-Mozido (B3004)_SEC_010_013195

OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER, AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT AND THE OTHER TRANSACTION DOCUMENTS BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

*[Signature page follows]*

CONFIDENTIAL TREATMENT REQUESTED
EXEMPT FROM FOIA

In-Re-Mozido (B3004)_SEC_010_013196

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed and delivered by their proper and duly authorized officers as of the date and year first written above.

**ISSUER:**

**BRENTWOOD FINANCIAL, LLC**
a Florida limited liability company

By:_____
Name:
Title:

**PURCHASER:**

_____


_____

Address for Notices:

[SIGNATURE PAGE TO NOTE PURCHASE AGREEMENT]

## EXHIBIT A

## FORM OF NOTE

**[Attach when finalized]**

CONFIDENTIAL TREATMENT REQUESTED
EXEMPT FROM FOIA

In-Re-Mozido (B3004)_SEC_010_013198

CONFIDENTIAL TREATMENT REQUESTED
EXEMPT FROM FOIA

In-Re-Mozido (B3004)_SEC_010_013199