

THIS NOTE AND THE SECURITIES ISSUABLE UPON THE CONVERSION HEREOF HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR ANY U.S. STATE SECURITIES LAWS, AND, UNLESS SO REGISTERED, MAY BE OFFERED OR SOLD, DIRECTLY OR INDIRECTLY, IN THE UNITED STATES OR TO U.S. PERSONS IN ACCORDANCE WITH THE PROVISIONS OF THE SECURITIES ACT, OR PURSUANT TO AN AVAILABLE EXEMPTION FROM, OR IN A TRANSACTION NOT SUBJECT TO, THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT AND IN EACH CASE ONLY IN ACCORDANCE WITH APPLICABLE STATE SECURITIES LAW.

**MOZIDO, LLC**
**CONVERTIBLE PROMISSORY NOTE**

$1,700,000                                                                                               June 11, 2013

FOR VALUE RECEIVED, **MOZIDO, LLC**, a Delaware limited liability company (the "**Issuer**"), with its principal executive office located at 1950 Stemmons Freeway, Suite 6040, Dallas, TX 75207 (the "**Principal Office**"), promises to pay to the order of Brentwood Investments, LLC a Florida limited liability company (together with its permitted successors, assigns and designees, the "**Purchaser**"), in lawful money of the United States of America the principal sum of **One Million Seven Hundred Thousand Dollars ($1,700,000)**, or such lesser amount as shall equal the outstanding principal amount advanced hereunder and outstanding from time to time, together with interest from the date of this Note on the unpaid principal balance at a rate equal to 8% per annum, simple interest, computed on the basis of a 360 day year consisting of twelve 30-day months (the "**Interest**"). All unpaid principal, together with any then unpaid and accrued Interest and other amounts payable hereunder, shall be due and payable on the earlier of: (i) the close of business on the date that is ten (10) years from the date of this Note, or (ii) when, upon or after the occurrence of an Event of Default (as defined below), such amounts become due and payable to the Purchaser in accordance with the terms hereof (the earliest of such dates being hereinafter referred to as the "**Maturity Date**"). This Convertible Promissory Note (this "**Note**") is a "Note" issued pursuant to the Note Purchase Agreement, dated as of even date herewith(as may be amended, restated, modified, or supplemented from time to time, the "**Note Purchase Agreement**"), by and among the Issuer, Affinity Holding, LLC, as Guarantor, and the Purchaser.

The following is a statement of the rights of the Purchaser and the conditions to which this Note is subject, and to which the Purchaser, by the acceptance of this Note, agrees:

1. **Definitions**. As used in this Note, the following capitalized terms have the following meanings:

    (a) "**Additional Notes**" means each of the "Notes" as such term is defined in the Note Purchase Agreement, other than this Note.

1

(b) **"Event of Default"** has the meaning given in Section 4 hereof.

(c) **"Interest"** has the meaning given in the introductory paragraph hereof.

(d) **"Maturity Date"** has the meaning given in the introductory paragraph hereof.

(e) **"Obligations"** means and includes all loans, advances, debts, liabilities and obligations, howsoever arising, owed by the Issuer to the Purchaser of every kind and description (whether or not evidenced by any note or instrument and whether or not for the payment of money), now existing or hereafter arising under or pursuant to the terms of this Note, including, all interest, fees, charges, expenses, attorneys' fees and costs and accountants' fees and costs chargeable to and payable by the Issuer hereunder and thereunder, in each case, whether direct or indirect, absolute or contingent, due or to become due, and whether or not arising after the commencement of a proceeding under Title 11 of the United States Code (11 U. S. C. Section 101 *et seq.*), as amended from time to time (including post-petition interest) and whether or not allowed or allowable as a claim in any such proceeding.

(f) **"Material Adverse Effect"** means, as reasonably determined by Purchaser, a material adverse effect on (i) the business, assets, operations, prospects or financial or other condition of the Guarantor or the Issuer; (ii) the ability of the Issuer or the Guarantor to pay or perform the Obligations in accordance with the terms of this Agreement, any Note, and any other Transaction Document and to avoid an Event of Default, or an event which, with the giving of notice or the passage of time or both, would constitute an Event of Default, under this Agreement, any Note, and any other Transaction Document; or (iii) the rights and remedies of the Purchaser under this Agreement, any Note, and any other Transaction Document or any related document, instrument or agreement.

(g) **"Material Agreement"** means any agreement to which the Issuer, Guarantor or any of their respective Affiliates becomes a party after the date hereof, the termination of which could reasonably be expected to result in a Material Adverse Effect.

Additional capitalized terms used herein and not otherwise defined herein shall have the meanings given to such terms in the Note Purchase Agreement.

2. **Interest**. Accrued Interest on this Note shall be payable on the Maturity Date.

3. **Events of Default**. The occurrence of any of the following shall constitute an **"Event of Default"** under this Note and the other Transaction Documents:

(a) *Failure to Pay.* The Issuer shall fail to pay when due any principal payment or any interest or other payment required under the terms of this Note on the date due and such payment shall not have been made within five days of the due date; or

(b) *Representations and Warranties.* Any representation or warranty made in this Note or in connection with this Note, any of the other Transaction Documents, or the Obligations,

shall prove to have been false or misleading when made (or, if applicable, when reaffirmed) in any material respect; or

(c) *Covenants.* The Issuer or the Guarantor fails to timely and properly observe, keep or perform, any term, covenant, agreement or condition in this Note or in any of the other Transaction Documents (including without limitation any Additional Note); or

(d) *Cross Default.* The Issuer or the Guarantor is in breach or default under any Indebtedness or other obligations (other than those evidenced by this Note), which default is not cured within any applicable cure period set forth in the agreement with respect to the Indebtedness or other obligations and which would cause or permit the holder of such Indebtedness or other obligations to accelerate the maturity thereof; or

(e) *Validity of Transaction Documents.* The Issuer or the Guarantor shall challenge the validity and binding effect of any provision of any of the Transaction Documents or shall state its intention to make such a challenge of any of the Transaction Documents or any of the Transaction Documents shall for any reason (except to the extent permitted by its express terms) cease to be; or

(f) *Inability to Pay Debts.* The Issuer or the Guarantor admits in writing its present inability generally to pay its debts as they mature or shall make any assignment for the benefit of any of its creditors; or

(g) *Judgments.* The entry of a final judgment for the payment of money involving more than $100,,000 against the Issuer or the Guarantor, and the failure by the Issuer or the Guarantor to discharge the same, or cause it to be discharged, within thirty (30) days from the date of the order, decree or process under which or pursuant to which such judgment was entered; or

(h) *Suspension of Business.* The Issuer or the Guarantor suspends for more than ten (10) Business Days or terminates its business operations, or liquidates, dissolves or terminates its existence; or

(i) *Voluntary Bankruptcy or Insolvency Proceedings.* The Issuer or the Guarantor shall (i) apply for or consent to the appointment of a receiver, trustee, liquidator or custodian of itself or of all or a substantial part of its property, (ii) be unable, or admit in writing its present inability, to pay its debts generally as they mature, (iii) make a general assignment for the benefit of its or any of its creditors, (iv) be dissolved or liquidated, (v) become insolvent (as such term may be defined or interpreted under any applicable statute) as determined by a court of competent jurisdiction, (vi) commence a voluntary case or other proceeding seeking liquidation, reorganization or other relief with respect to itself or its debts under any bankruptcy, insolvency or other similar law now or hereafter in effect or consent to any such relief or to the appointment of or taking possession of its property by any official in an involuntary case or other proceeding commenced against it, or (vii) take any action for the purpose of effecting any of the foregoing; or

(j) *Involuntary Bankruptcy or Insolvency Proceedings.* Proceedings for the appointment of a receiver, trustee, liquidator or custodian of the Issuer or the Guarantor or of all or a substantial part of the property thereof, or an involuntary case or other proceedings seeking liquidation, reorganization or other relief with respect to the Issuer or the Guarantor or the debts thereof under any bankruptcy, insolvency or other similar law now or hereafter in effect shall be commenced and an order for relief entered or such proceeding shall not be dismissed or discharged within 30 days of commencement; or

(k) *Default or Termination of Material Agreements.* The Issuer or the Guarantor (i) shall materially default or breach the terms of such Material Agreement, and shall fail to cure such default or breach within any applicable grace period set forth therein, or (ii) any such Material Agreement shall be terminated by reason of the default or breach of the Issuer or Guarantor; or

(l) *Material Adverse Effect.* The occurrence of a Material Adverse Effect.

4. **Rights of Purchaser upon Default**. Upon the occurrence or existence of any Event of Default (other than an Event of Default described in Sections 4(i) or 4(j)) and at any time thereafter during the continuance of such Event of Default, the Purchaser may, by written notice to the Issuer, declare all outstanding Obligations payable by the Issuer hereunder to be immediately due and payable without presentment, demand, protest or any other notice of any kind, all of which are hereby expressly waived. Upon the occurrence or existence of any Event of Default described in Sections 4(i) and 4(j), immediately and without notice, all outstanding Obligations payable by the Issuer hereunder shall automatically become immediately due and payable, without presentment, demand, protest or any other notice of any kind, all of which are hereby expressly waived. In addition to the foregoing remedies, upon the occurrence or existence of any Event of Default, the Purchaser may, exercise any other right, power or remedy granted to it by the Transaction Documents or otherwise permitted to it by law, either by suit in equity or by action at law, or both.

5. **Conversion Rights**. The Purchaser shall have the right to convert this Note and accrued and unpaid Interest due under this Note into Preferred Units, as set forth in this Section 5.

(a) *Conversion into Issuer's Preferred Units.* The Purchaser shall have the right, from and after the Conversion Right Commencement Date, and then at any time until the Maturity Date, to convert any outstanding and unpaid principal portion of this Note, and any accrued but unpaid Interest on such portion, at the election of the Purchaser (the date of such conversion being a "**Conversion Date**") into Preferred Units at the Conversion Price (as hereinafter defined). Upon delivery to the Issuer of a completed Notice of Conversion, a form of which is attached hereto as Exhibit A, the Issuer shall issue and deliver to the Purchaser within five (5) business days from the Conversion Date (such day being the "**Delivery Date**") that number of units for the portion of the Note and any accrued but unpaid Interest on such portion converted in accordance with the following sentence. The number of Preferred Units to be issued upon each conversion of this Note shall be determined by dividing that portion of the principal of the Note to be converted and any accrued but unpaid Interest on such portion, by the Conversion Price. The "**Conversion Price**" as of the date of this Note is $.01849853 per unit and shall be subject to adjustment as provided hereafter in this Section 5.

(b)     *Manner of Conversion.*  This Note may be converted by the Purchaser by presentment of this Note, accompanied by written notice stating that Purchaser elects to convert all or a portion of the principal amount thereof, and any accrued but unpaid Interest on such portion, and stating the name or names, together with addresses, in which the Preferred Units are to be issued. Each conversion shall be deemed to have been effected immediately prior to the close of business on the date on which this Note shall have been so surrendered to Issuer; and at such time the rights of the Purchaser as to that portion of this Note so converted shall cease, and the person in whose name or names the Preferred Units shall be issuable upon such conversion shall be deemed to have become the holder or holders of record thereof.  If this Note is converted in part only, upon conversion of such part hereof, the Issuer shall execute and deliver to the Purchaser upon surrender of this Note a new Note in the aggregate principal amount equal to the then unconverted portion of the principal amount of this Note plus any accrued but unpaid and unconverted Interest and in all other respects identical to this Note.

(c)     *Distributions, Splits, Combinations, Reclassifications.*  In the event the Issuer shall hereafter (i) make a distribution of Preferred Units or Common Units with respect to the Preferred Units or the Common Units, (ii) subdivide its outstanding Preferred Units or Common Units into a greater amount of Preferred Units or Common Units, as applicable, or (iii) combine its outstanding Preferred Units or Common Units into a smaller amount of Preferred Units or Common Units, as applicable, the Conversion Price in effect immediately prior to such action shall be adjusted so that the Purchaser shall be entitled to receive the amount of Preferred Units that it would have owned immediately following such action had this Note or any remaining portion hereof been converted in full immediately prior thereto.  All adjustments made pursuant to this Section 6(c) shall become effective immediately after the earlier of the record date or the payment date in the case of a distribution and shall become effective immediately after the effective date in the case of a subdivision or combination.

(d)     *Recapitalizations, Reorganizations, etc.*  In the event of any recapitalization, reorganization, consolidation or merger of the Issuer with or into another Person or the sale, transfer or other disposition of all or substantially all of the assets of the Issuer and its Subsidiaries (viewed as a whole) to another Person, this Note shall thereafter be convertible (at the option of the Purchaser) into the kind and amount of limited liability company interests or other securities or property that a holder of the number of Preferred Units deliverable upon conversion of this Note would have been entitled upon such recapitalization, reorganization, consolidation, merger or sale; and, in such case, appropriate adjustment (as determined in good faith by the Board of Directors and such determination is agreed upon by the Purchaser) shall be made in the application of the provisions set forth in this Section 5 with respect to the rights and interests thereafter of the Purchaser, to the end that the provisions set forth in this Section 5 shall thereafter be applicable, as nearly as reasonably may be, in relation to any limited liability company interests or other securities or property thereafter deliverable upon conversion of this Note.

(e)     *De Minimis Adjustments.*  No adjustment to the Conversion Price shall be made if such adjustment would result in a change in the Conversion Price of less than $.01.  Any adjustment of less than $.01 that is not made shall be carried forward and shall be made at the time of

and together with any subsequent adjustment that, on a cumulative basis, amounts to an adjustment of $.01 or more in the Conversion Price.

(f) *Certificate as to Adjustments; Dispute.* Upon the occurrence of each adjustment or readjustment of the Conversion Price pursuant to this Section 5, the Issuer at its expense shall promptly compute such adjustment or readjustment in accordance with the terms hereof and prepare and furnish to the Purchaser a certificate setting forth such adjustment or readjustment and showing in detail the facts upon which such adjustment or readjustment is based. The Issuer shall, upon the written request at any time of the Purchaser, furnish or cause to be furnished to the Purchaser a like certificate setting forth (i) such adjustments and readjustments, (ii) the Conversion Price at that time in effect, and (iii) the number of Preferred Units and the amount, if any, of other property that at that time would be received upon the conversion of this Note.

(g) *Notices of Record Date.* In the event of any taking by the Issuer or Guarantor of a record of the holders of any class of securities for the purpose of determining the holders thereof who are entitled to receive any distribution, any Convertible Securities or any right to subscribe for, purchase or otherwise acquire any limited liability company interests or any other securities or property, or to receive any other right, the Issuer shall mail to the Purchaser, at least twenty (20) days prior to the date specified therein, a notice specifying the date on which any such record is to be taken for the purpose of such distribution or rights, and the amount and character of such distribution or rights.

6. **Right of Redemption.** This Note may not be redeemed or prepaid prior to the Maturity Date without the prior written consent of Purchaser, which may be granted or refused in the Purchaser's sole discretion.

7. **Successors and Assigns.** Subject to the restrictions on transfer described in Sections 9 and 10 below, the rights and obligations of the Issuer and the Purchaser shall be binding upon and benefit the permitted successors, assigns, heirs, administrators and transferees of the parties.

8. **Waiver and Amendment.** No waiver, termination or discharge of this Note, or any of the terms or provisions hereof, shall be binding upon any party hereto unless confirmed set forth in writing and signed by the Issuer, the Purchaser. Any waiver of any term or condition shall not be construed as a waiver of any subsequent breach or a subsequent waiver of the same term or condition, or a waiver of any term or condition of this Note. No failure to exercise, or delay in exercising, any right, remedy, power or privilege arising from this Note shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

9. **Transfer of this Note or Securities Issuable on Conversion Hereof.** Purchaser may not assign this Note or its interests and obligations hereunder, by operation of law or otherwise, in whole or in part or sell participations in this Note and its interests in the Obligations hereunder, without the prior written consent of the Issuer, which consent will not be unreasonably withheld or delayed; provided, however, that Purchaser may assign this Note or its interests and obligations hereunder, in whole or in part or sell participations in this Note to an Affiliate, as that term is defined

in the Note Purchase Agreement, without the written consent of the Issuer. With respect to any permitted offer, sale or other disposition of this Note or securities into which such Note may be converted, the Purchaser will give written notice to the Issuer prior thereto, describing briefly the manner thereof, together with representations to the Issuer, to the effect that such offer, sale or other disposition may be effected without registration or qualification under any federal or state law then in effect. Each Note thus transferred and each certificate representing the securities thus transferred shall bear a legend as to the applicable restrictions on transferability in order to ensure compliance with the Securities Act, unless in the opinion of counsel for the Issuer such legend is not required in order to ensure compliance with the Securities Act. The Issuer may issue stop transfer instructions to its transfer agent in connection with such restrictions. Subject to the foregoing, transfers of this Note shall be registered upon registration books maintained for such purpose by or on behalf of the Issuer. Prior to presentation of this Note for registration of transfer, the Issuer shall treat the registered holder hereof as the owner and holder of this Note for the purpose of receiving all payments of principal and interest hereon and for all other purposes whatsoever.

10. **Assignment by the Issuer**. Neither this Note nor any of the rights, interests or obligations hereunder may be assigned, by operation of law or otherwise, in whole or in part, by the Issuer without the prior written consent of the Purchaser.

11. **Notices**. All notices, requests, demands, consents, instructions or other communications required or permitted hereunder shall in writing and faxed, mailed or delivered to each party at the respective addresses of the parties set forth in the Note Purchase Agreement, or at such other address, e-mail address or facsimile number as each party shall have furnished to the other party in writing. All such notices and communications will be deemed effectively given the earlier of (i) when received, (ii) when delivered personally, (iii) one Business Day after being delivered by facsimile (with receipt of appropriate confirmation), (iv) one Business Day after being deposited with an overnight courier service of recognized standing or (v) four days after being deposited in the U.S. mail, first class with postage prepaid.

12. **Usury**. In the event any interest is paid on this Note which is deemed to be in excess of the then legal maximum rate, then that portion of the interest payment representing an amount in excess of the then legal maximum rate shall be deemed a payment of principal and applied against the principal of this Note.

13. **Waivers**. The Issuer hereby waives notice of acceptance, default, presentment or demand for payment, protest or notice of nonpayment or dishonor and all other notices or demands relative to this instrument.

14. **Governing Law**. This Note and all actions arising out of or in connection with this Note shall be governed by and construed in accordance with the laws of the State of Texas, without regard to the conflicts of law provisions of the State of Texas or of any other state.

15. **WAIVER OF JURY TRIAL**. THE ISSUER, AND, BY ITS ACCEPTANCE HEREOF, THE PURCHASER, EACH IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF THIS NOTE

OR ANY OTHER TRANSACTION DOCUMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). THE ISSUER, AND, BY ITS ACCEPTANCE HEREOF, THE PURCHASER, EACH (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER, AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES TO THE TRANSACTION DOCUMENTS HAVE BEEN INDUCED TO ENTER INTO THIS NOTE AND THE OTHER TRANSACTION DOCUMENTS BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

16. **Time Is of the Essence**.   Time is of the essence of this Note, and of each provision hereof.

17. **Characterization as Indebtedness**.   It is the express intent of the Issuer, the Guarantor and the Purchaser that, prior to conversion of this Note as contemplated in Section 6 above, the obligations of the Issuer hereunder shall constitute indebtedness for borrowed money, and not equity. In furtherance of the foregoing, each of the Issuer, the Guarantor and the Purchaser shall reflect their rights and obligations hereunder in their books and records as indebtedness for borrowed money, and not as equity.

*[Signature Page Follows]*

The Issuer has caused this Note to be issued as of the date first written above.

**MOZIDO, LLC**
a Delaware limited liability company

By: _____
Name: Ira D. Levy
Title: Executive Vice President, Chief Financial Officer and Secretary

CONFIDENTIAL TREATMENT REQUESTED
EXEMPT FROM FOIA

In-Re-Mozido (B3004)_SEC_012_024103

## EXHIBIT A

## FORM OF

## NOTICE OF CONVERSION

(To be executed by the Purchaser in order to convert the Note)

The undersigned hereby elects to convert $_____ of the Principal and accrued but unpaid Interest with respect to the Convertible Promissory Note issued by MOZIDO, LLC on [_____] into Preferred Units of MOZIDO, LLC according to the conditions set forth in such Convertible Promissory Note, as of the date written below.

Date of Conversion: _____

Conversion Price: _____

Preferred Units To Be Delivered: _____

Signature: _____

Print Name: _____

Address: _____
_____
_____

1

CONFIDENTIAL TREATMENT REQUESTED
EXEMPT FROM FOIA

In-Re-Mozido (B3004)_SEC_012_024104