

**To:** Rick Braddock[rick.braddock@mozido.com]; George Marcus[GJM@mcm-law.com]
**Cc:** Greg Corona[greg.corona@mozido.com]; Layne A. Deutscher[ldeutscher@munsch.com]
**From:** George Marcus
**Sent:** Sun 1/6/2013 4:33:43 PM
**Importance:** Normal
**Subject:** Re: Attorney- client privilege

Thanks, Rick. We don't need to have a debate about all of this by email, as interesting as it might be, and you certainly have perspectives that I don¹t. It seems that there are a number of important issues to work out with Michaelnand I wish we could find a way to do so "on the merits" and without jeopardizing valuable relationships. I'll do whatever I can to help in this regard. Geo.

On 1/6/13 2:29 PM, "Rick Braddock" <rick.braddock@mozido.com> wrote:

>I don't think you are right about a lot of this, but I do want to work it
>out and I appreciate you keeping this away from Michael while we try to
>work it out.
>
>First of all, Michael has been totally out of control on the fundraising.
>He consciously withheld numbers (onMexico) from O'Neal and made other
>misrepresentations in his pitch while I was there. Second, I don't see
>how you can make a representation to investors about the value of a
>guarantee without disclosing that a director is suing you for failure of
>same. Third, the Board was not made aware of this discount, nor was it
>negotiated by anyone, just imposed by Michael. Fourth, there was an
>effort to work it out- Geier just giving more time for nothing but
>further interest payments- but I'm not ok with that because I, too, am
>owed money ( with a guarantee, I think) and I have no faith just giving
>him a further extension ( he already had one past the 90 days until the
>suit was filed, another from the filing of the suit until the present),
>with all the promises he has made and broken about fundraising. Finally,
>it is the height of legal absurdity to argue we should not disclose this
>to the Board, with Geier sitting there, on a guarantee that is probably
>about four months past the due date and reflects a "value" Michael is
>representing to outside investors (probably not with proper disclosure of
>the problems) and trying to charge the company what I would call an
>exorbitant amount for.
>
>Please don't get Michael going on this because it will put me in a
>position where no good will happen. I have seen him fundraise and it is
>ugly. By the way, you know I wanted to take the appointment right away
>earlier- it would obviously destroy the company. Rick
>
>Sent from my iPad
>
>On Jan 6, 2013, at 11:40 AM, "George Marcus" <GJM@mcm-law.com> wrote:
>
>> Thanks, Rick. I am working with Michael on corporate governance
>>matters,
>> and as I mentioned yesterday, I have a few thoughts prompted by Greg's
>> email that I wanted to share with you and others on this email. Based
>>on
>> the verbal and written exchanges of the past several weeks, there seem
>>to

SEC-MC-E-0000200

>> be four governance "hot points" that deserve some further analysis and
>> thought.  These are the Geier situation, the "spread" that Michael is
>> getting on his own efforts to raise funds to invest in Mozido, the
>> "dribbling in" of funds, and, fourth, "firing" Mike Liberty.  Let me
>>share
>> some thoughts on these subjects.
>>
>> But first, take a look at the article in Friday's New York times about
>> Eastern skiing, and in particular, Sugarloaf Mountain, where my family
>> maintains a home.  Rick, if you want to ski without fighting crowds of
>> Saudi Arabian sheiks and other potentates, or paying $19 for a
>>hamburger,
>> you have a standing invitation to our place at Sugarloaf.  Be sure to
>> bring your axe so you can cut some wood to heat the place and your
>>shotgun
>> to hunt for food.   Check it out:
>>
>>http://travel.nytimes.com/2013/01/06/travel/on-maines-slopes-plenty-of-el
>>bo
>> w-room.html?hpw&_r=0
>>
>> GEIER
>>
>> Its unfortunate that his note has not been paid.  There is no dispute
>>that
>> he is owed the full amount, plus interest.  Both you and Michael are
>> guarantors, in equal shares.  I believe that the money was borrowed and
>> the guaranties given in good faith; apparently circumstances have made
>> honoring them on a timely basis problematic.  Nevertheless, I am sure
>>they
>> will be honored.
>>
>> In the meantime, I have had several conversations with Phil Frankel,
>> Geier's attorney.  There is a willingness to try to work something out.
>> At the same time, there have been warnings about going to the Mozido
>>Board
>> with a report on this unfortunate situation, and I suppose there will be
>> some blaming and finger pointing to accompany such a Board report.  In
>>my
>> view, as a matter of corporate governance, it is a mistake to report to
>> the Board without first having attempted to work things out with Geier.
>>It
>> would seem that the first question that would be raised by the Board is:
>> "What have you done to work things out?"  The answer "nothing"(in
>> substance or effect) would be embarrassing.
>>
>> Frankel has told me point blank that Geier is willing to work things
>>out,
>> but he (stated by Frankel) insists that both you and Michael participate
>> in the discussions.  A perfectly reasonable request.  I have offered, as
>> counsel for the borrower, Mobile Money Partners, to be the intermediary
>> with Phil Frankel to negotiate something.  I am confident of success on
>> reasonable terms.  I need your authorization to proceed.  I have
>> Michael's.  If you don't want me to be the intermediary, that's fine.
>> Pick someone else, but whomever it is, there must be support from both
>>you

\>\> and Michael.
\>\>
\>\> In the meantime, Geier's complaint in court will shortly ripen into a
\>\> default judgment.  That's about the end of the line, legally, so there
\>\>is
\>\> really nothing to lose by trying to work it out with Geier.  There is no
\>\> shame in this, and I urge you to join Michael and authorize these
\>\> negotiations.
\>\>
\>\> THE SPREAD
\>\>
\>\> It is well known that Michael, and Michael alone, has been funding the
\>\> cash needs of Mozido for the past several months, and at least for the
\>\> immediate future, it does not appear that Mozido has other cash
\>\>resources
\>\> besides those that Michael can bring to the table.   He has done so by
\>\> raising funds from investors in his circle of friends.  In each of these
\>\> cases, he has provided his personal guaranty of the moneys advanced, and
\>\> in most cases, he has also provided a pledge of personal assets to
\>\>secure
\>\> his guaranty. Because Michael raises money with personal guaranties, and
\>\> with the pledge of assets to secure the guaranties, he has put a floor
\>\>on
\>\> the downside for these investors.  As such, it is entirely reasonable
\>\>for
\>\> him to cap the upside at some place below his own upside. Now you can
\>\> argue about valuation and the rate of exchange, but you can't argue
\>\>about
\>\> the logic.  There is nothing illegal or improper about this. Its
\>\>business.
\>\> Rick, I think you were involved with the Turner investment into
\>\>Brentwood
\>\> Financial, which was structured on exactly this basis.
\>\>
\>\> The investors, such as Turner, who are participating are universally
\>\> accredited, sophisticated and fully aware of the existence of a spread,
\>\> and they nevertheless find it to be a good deal, because of the downside
\>\> protection.   Rick, you have invested several million dollars into
\>\>Mozido.
\>\> Wouldn't you accept a lesser return on the upside if someone guarantied
\>\> that you would not lose a dollar on the downside?
\>\>
\>\> Further, I have advised Michael on the corporate side--i.e. his entities
\>\> and the documentation, while Brownstein, Hyatt, a major law firm in
\>\> Denver, has advised Michael on the securities side.  The Brownstein firm
\>\> and I are satisfied that what Michael is doing is entirely legal.  At my
\>\> instigation, we had a conference call among myself, Jeff Knetsch of
\>\> Brownstein, and Layne Deutscher and his partner to answer questions and
\>\>be
\>\> sure the Mozido legal counsel was up to speed on how Michael was raising
\>\> funds. I think the upshot of this conference is that while there might
\>\>be
\>\> some debate about "best practices"--there always is--Michael's fund
\>\> raising program has been blessed by competent securities counsel and is
\>\>in
\>\> compliance with law.

SEC-MC-E-0000202

>>
>> Now, it is also appropriate to look at the implications of this for
>> Mozido. You have raised a "corporate opportunity" issue in regard to
>>the
>> fact that Michael has arranged for a "spread" between the price at which
>> he invests in Mozido and the price at which he sells his own securities
>>in
>> order to raise funds for such purpose. Assuming that Michael is subject
>>to
>> a corporate opportunities duty, the premise of the concept is that some
>> right, prospect or business opportunity of the corporation (or limited
>> liability company) is being usurped for personal benefit. In the case
>>of
>> Mozido, this would require you to conclude that Mozido has the ability
>>to
>> raise funds on the same basis as Michael is raising funds, i.e. with
>> personal guaranties and/or outside, non-Mozido collateral to protect the
>> downside, justifying a reduced upside. But I am aware of no individual
>> willing to provide such a guaranty or such outside collateral. Further,
>> even if Michael has duties regarding corporate opportunities, he has no
>> duty to create a corporate opportunity, i.e. he has no duty to provide
>>his
>> personal guaranty for Mozido's use.
>>
>> Bottom line: Unless there are creditworthy people willing to provide
>> personal guaranties and outside collateral to secure Mozido securities,
>> Michael, by doing the same for his own securities is not usurping any
>> corporate opportunity.
>>
>> It is appropriate to discuss and debate the economic rate of exchange,
>>but
>> it is inappropriate and unfair to Michael to accuse him of any wrong
>>doing
>> or breach of any duty to Mozido. If Mozido were an established company
>>and
>> could stand on its own in terms of raising funds, we might be having a
>> different conversation, but at this point, there appears to be only one
>> person willing and able to fund the Company's $1,000,000 per month burn
>> rate, and that is Michael. It is entirely fair to talk about this with
>> the Board and to inform them--who knows, maybe someone will step up to
>>the
>> plate, but it is not fair to suggest impropriety. In addition, if there
>> are other options--pursue them.
>>
>> DRIBBLING IN FUNDS
>>
>> This is a related point. Mozido is, today, a small company; maybe your
>> objections are well founded, particularly for a larger company, but
>> dribbling funds is a fact of life for small companies. It would be
>>better
>> if Mozido were self funding, or had an investor who had the ability and
>> willingness to fund a large bank balance. But it doesn't. If it did,
>> Michael would not be going through the stress and personal sacrifices
>> needed to feed the Mozido juggernaut. When discussing this with the
>>Board,

>> Michael's efforts should be lauded, encouraged and assisted so long as
>> they are necessary to assure funding for the Company.  At the same time,
>> all efforts should be made to find alternative means of funding.
>>
>> FIRING MIKE LIBERTY
>>
>> In the most exasperated of moments, you have suggested that the Board
>> might fire Mike Liberty.  I have let the comment go, recognizing the
>> exasperation that produced it, and not wanting to fuel the fire.  But
>>its
>> time to point out that under the Mozido Operating Agreement, Mike has
>>the
>> right to appoint, and to remove, at will, four Mozido directors.  Each
>>of
>> you, Phil Geier, Bob Selander, and Ric Duques serve as appointees of
>>Mike
>> Liberty.  Each of such appointees serve at Mike's pleasure; he can
>>remove
>> each of you at will.
>>
>> I think it would be terrible for Mozido if this kind of discussion were
>>to
>> come up at the Board meeting.  There can be no question about the
>>skills,
>> experience and prestige that you, and Messers Geier, Selander and Duques
>> bring to Mozido.  But if there is to be such a discussion, everyone
>>might
>> as well know the rules.
>>
>>
>> CONCLUSION
>>
>> I would like to suggest that what has occurred to date should be treated
>> as water under the bridge, and that laying blame--if it must
>> happen--should be left for another time when it will not distract people
>> from focussing on what it is going to take to get Mozido across the goal
>> line.  I encourage your efforts to sit down and talk personally with
>> Michael.  I write this email with great reluctance, but it seems that
>> there were things that needed to be said, and for better or for worse,
>> email has become the forum of choice for the participants in the debate.
>>
>> I am willing to assist in any way requested.
>>
>> Thanks for allowing me to present my views.  Geo.
>>
>>
>>
>>
>>
>>
>>
>>
>>
>> On 1/6/13 8:52 AM, "Rick Braddock" <rick.braddock@mozido.com> wrote:
>>

SEC-MC-E-0000204

>>> Michael has raw nerves now, but based on a communication or two with
>>>me,
>>> he may be calming down a bit. But he doesn't get much about corporate
>>> governance that I think you need to help him with, because he won't
>>> listen to anyone else.
>>>
>>> For Michael to be out on his own , talking with investors and
>>> representing the value of his guarantee, while at the same time not
>>> disclosing that he is being sued by a DIRECTOR for the failure of that
>>> guarantee is beyond major. The fact that you, not Mozido's counsel, are
>>> representing him compounds the error. And it is more than compounded by
>>> Michael then coming to the company and demanding to be compensated
>>> (egregiously) for the same guarantee. Were all the facts out, Michael
>>> could get in real trouble for that. On top of this, I only sat in one
>>> investor meeting with Michael (O'Neal) and he made many, let me put it
>>> this way, misrepresentations.
>>>
>>> We all want to work thru this and get it fixed- Michael has now begun
>>>to
>>> spread this stuff thru the company with a few of his more recent
>>>emails.
>>> You need to help get him back in line. Thanks, Rick
>>>
>>>
>>> Sent from my iPad
>>
>>
>