

## PREFERRED MEMBER SUBSCRIPTION AGREEMENT

**THIS PREFERRED MEMBER SUBSCRIPTION AGREEMENT** (this "Agreement") is made and entered into as of August 31, 2016, (the "Conversion Date"), by and between BRTMDO Investments, LLC d/b/a Brentwood Investments, LLC ("Brentwood") and the undersigned holder ("Noteholder") of Convertible Promissory Notes issued by Brentwood as set forth on Schedule I hereto. Brentwood and the Noteholder are sometimes referred to herein individually as a "Party" or collectively as the "Parties."

### BACKGROUND

A. Noteholder is the owner of one or more Convertible Promissory Notes (each a "Note" or combined the "Notes") issued by Brentwood, which note or notes are convertible into Preferred Membership Units (the "Units") of MDO, LLC, formerly known as Mozido, LLC ("Mozido"), a Delaware limited liability company formed on April 7, 2008.

B. Noteholder has, as of the Conversion Date, exercised the right to convert one or more of its Notes into Units and thereby to become a preferred member of in Mozido, as defined in Mozido's Amended and Restated Limited Liability Company Agreement dated as of August 27, 2010, as amended from time to time (the "Company Agreement"), pursuant to the terms and conditions of the Notes and the Company Agreement.

C. The Noteholder owned one or more Notes having a principal balance as set forth on Schedule I hereto, which Noteholder has converted and wishes to receive the Units into which the Notes were converted, or to cause Units to which it is entitled to be issued to its nominees, upon the additional terms and conditions set forth in this Agreement.

### AGREEMENT

**NOW, THEREFORE,** in consideration of the foregoing and of the mutual premises, covenants, representations, warranties and agreements set forth in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, hereby agree as follows:

### ARTICLE I

### REPRESENTATIONS, WARRANTIES AND UNDERSTANDINGS OF THE NOTEHOLDER

The Noteholder hereby represents and warrants to Brentwood as follows:

1.1. Ownership. The Noteholder was the sole record holder and beneficial owner of the Note(s) set forth opposite the name of such Noteholder on Schedule I hereto on the Conversion Date. On the Conversion Date the Noteholder owned his, her or its Note(s) free and clear of all hens, pledges, mortgages, charges, security interests or encumbrances of any kind whatsoever. The Noteholder is not a party to any agreement or arrangement which will impose any such encumbrance upon the Units as a result of exercising the Note(s).

1.2. Power and Authority: Enforceability. The Noteholder has the power and authority to execute and deliver this Agreement, to perform his, her or its obligations hereunder and to consummate the transactions contemplated hereby. This Agreement constitutes a legal, valid, and

binding obligation of the Noteholder, and is enforceable against the Noteholder in accordance with its terms.

1.3. **Approvals**. No consent, approval, authorization or order of any person, entity, court, administrative agency or governmental authority is required for the execution, delivery or performance of this Agreement by the Noteholder.

1.4. **Conflicts**. The execution, delivery and performance of this Agreement by the Noteholder will not (a) conflict with, or result in a breach of, or constitute a default under, or result in violation of, any agreement or instrument to which the Noteholder is a party or by which the property of the Noteholder is bound or (b) result in the violation of any applicable law or order, judgment, writ, injunction, decree or award of any court, administrative agency or governmental authority.

1.5. **Acquiring for Investment**. The Noteholder is acquiring the Units for his, her or its own account, for investment purposes only and not with a view towards or in connection with the public sale or distribution thereof in violation of the Securities Act of 1933, as amended (the "Securities Act"). The Noteholder will not, directly or indirectly, offer, sell, pledge or otherwise transfer his, her or its Units, or any interest therein, except pursuant to transactions that are exempt from the registration requirements of the Securities Act and/or sales registered under the Securities Act. The Noteholder understands and acknowledges that there is no public market for the Units and there can be no assurance that any public market will ever develop. There can be no assurance that the Noteholder will be able to sell or otherwise dispose of the Units. The Noteholder acknowledges that he, she or it must bear the economic risk of the Noteholder's investment in the Units indefinitely, unless the Units are registered pursuant to the Securities Act and any applicable state securities laws or an exemption from such registration is available, and that Mozido has no present intention of registering any such Units or any obligation to do so in the future.

1.6. **Accredited Investor Status**. The Noteholder is: (a) an "accredited investor" within the meaning of Rule 501 of Regulation D under the Securities Act; (b) experienced in making investments of the kind contemplated by this Agreement; and (c) capable, by reason of his, her or its business and financial experience, of evaluating the relative merits and risks of an investment in the Units.

1.7. **Risks**. The Noteholder understands that an investment in Mozido involves substantial risks. The Noteholder (a) can bear the economic risk of losing its entire investment in Mozido and has adequate means for providing for its current financial needs and contingencies and (b) has the financial acumen and sophistication to make an informed investment decision with respect to the transactions contemplated hereby and the Units to be issued hereunder, understands that such Units are restricted and not freely tradable, and (c) has had the opportunity to make inquiry to Mozido regarding its operations and financial condition and has received answers to all of such questions.

1.8. **Advice**. The Noteholder has carefully considered and has, to the extent that the Noteholder deems necessary, discussed with his, her or its professional legal, tax and financial advisers the suitability of an investment in Mozido and has determined that an investment in Mozido is suitable for the Noteholder. The Noteholder is relying solely upon the advice of his, her or its own legal, tax and financial advisers with respect to the tax and other legal aspects of an investment in the Units.

CONFIDENTIAL TREATMENT REQUESTED
EXEMPT FROM FOIA

In-Re-Mozido (B3044)_SEC _007_ 009921

1.9. <u>Survival</u>. The foregoing representations and warranties are true and correct as of the date hereof and shall be true and accurate as of the date of acceptance of this Agreement by Brentwood and shall survive thereafter. If any of such representations or warranties are not true and correct in any respect, the Noteholder shall, prior to such acceptance, give written notice of such fact to Brentwood specifying in reasonable detail which representations and/or warranties are not true and correct and the reasons therefore.

1.10. <u>Exemption of Offering</u>. The Noteholder understands that the Units are being issued by Brentwood in reliance upon an exemption from the registration requirements of the Securities Act, and applicable state securities laws, and that Brentwood is relying upon the accuracy of, and the Noteholder's compliance with, the Noteholder's representations, warranties and covenants set forth in this Agreement to determine the availability of such exemption.

## ARTICLE II

## REPRESENTATIONS AND WARRANTIES OF BRENTWOOD

Brentwood hereby represents and warrants to the Noteholder as follows:

2.1. <u>Organization: Good Standing</u>. Brentwood is a limited liability company duly organized and existing in good standing under the laws of the state of Delaware and has the requisite limited liability company power to own its properties and to carry on its business as now being conducted. Brentwood is duly qualified as a foreign corporation to do business and is in good standing in every jurisdiction where the failure so to qualify or be in good standing could reasonably be expected to have a Material Adverse Effect. "Material Adverse Effect" means any effect which, individually or in the aggregate with all other effects, reasonably would be expected to be materially adverse to the business, operations, properties, financial condition, operating results or prospects of Brentwood taken as a whole, or on the transactions contemplated hereby.

2.2. <u>Power and Authority: Enforceability</u>. Brentwood has the limited liability company power and authority to execute and deliver this Agreement and each of the other Transaction Documents to which it is a party, to perform its obligations hereunder and thereunder and to consummate the transactions contemplated hereby and thereby. This Agreement and the other Transaction Documents to which Brentwood is a party constitute the legal, valid, and binding obligation of Brentwood, and is enforceable against Brentwood in accordance with their respective terms.

2.3. <u>Approvals</u>. Except for filings pursuant to applicable state and federal securities laws, no consent, approval, authorization or order of any person, entity, court, administrative agency or governmental authority is required for the execution, delivery or performance of this Agreement by Brentwood.

2.4. <u>Conflicts</u>. The execution, delivery and performance of this Agreement by Brentwood will not (a) conflict with, or result in a breach of, or constitute a default under, or result in violation of, any agreement or instrument to which Brentwood is a party or by which the property of Brentwood is bound or (b) result in the violation of any applicable law or order, judgment, writ, injunction, decree or award of any court, administrative agency or governmental authority.

## ARTICLE III
## ISSUANCE OF UNITS AND TRANSFER RESTRICTIONS

3.1. **Schedules.** Noteholder agrees to complete and execute each of Schedules I and II attached to this Agreement, and completion and execution of such Schedules shall be a condition precedent to issuance, pursuant to this Agreement, of Units to Noteholder or Noteholder's designee(s). Without limiting the generality of the foregoing, Noteholder shall cause Schedule I to be executed in the name of Noteholder, and shall cause Schedule II to be executed by Noteholder and/or any assignee or designee of Noteholder whom Noteholder has designated as a recipient of Units upon conversion.

3.2. **Transfer of Restricted Securities.** The Noteholder acknowledges that the Units are restricted securities and subject to limitations on transfer as set forth in the Company Agreement and may be transferred only pursuant to: (a) an effective registration statement under the Securities Act and applicable state securities laws pertaining to such securities or an available exemption therefrom; (b) Rule 144 under the Securities Act (or any similar rule or rules then in force) if such rule or rules are available; and (c) compliance with the terms and conditions of the Company Agreement.

## ARTICLE IV
## MISCELLANEOUS PROVISIONS

4.1. **Survival of Representations: Entire Agreement.** All representations and warranties made by the Parties pursuant to this Agreement shall survive the execution and delivery of this Agreement. This Agreement and the other Transaction Documents constitute the entire understanding between the Parties with respect to the subject matter contained herein and therein and supersede any prior or contemporaneous understandings and agreements among them respecting such subject matter. Except as specifically set forth herein or therein, neither Brentwood nor the Noteholder makes any representation, warranty, covenant or undertaking with respect to such matters.

4.2. **Governing Law: Jurisdiction.** This Agreement shall be governed by and construed in accordance with the Delaware General Corporation Law (in respect of matters of corporation law) and the laws of the State of Delaware (in respect of all other matters) applicable to contracts made and to be performed in the State of Delaware. The Parties irrevocably consent to the jurisdiction of the United States federal courts and state courts located in the State of Delaware in any suit or proceeding based on or arising under this Agreement or the transactions contemplated hereby and irrevocably agree that all claims in respect of such suit or proceeding may be determined in such courts. The Parties irrevocably waive the defense of an inconvenient forum to the maintenance of such suit or proceeding in such forum. The Parties further agree that service of process upon Brentwood or the Noteholder, as applicable, mailed by first class mail to the addressed to each party at the address set forth herein, shall be deemed in every respect effective service of process upon Brentwood or the Noteholder in any suit or proceeding arising hereunder. Nothing herein shall affect the right of a Party to serve process in any other manner permitted by law. The Parties agree that a final non-appealable judgment in any such suit or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on such judgment or in any other lawful manner. The Parties irrevocably waive any right to a trial by jury under applicable law.

4.3. **Amendments: Counterparts.** Except as set forth below, this Agreement may be amended only by a written instrument duly executed by each of the Parties. This Agreement may

CONFIDENTIAL TREATMENT REQUESTED
EXEMPT FROM FOIA

In-Re-Mozido (B3044)_SEC _007_ 009923

be executed in counterparts, each of which when executed and delivered shall be deemed to be an original and all of which counterparts taken together shall constitute but one and the same instrument. It shall not be necessary in making proof of this Agreement or any counterparts hereof to produce or account for any of the other counterparts. In order to facilitate execution of this Agreement, this Agreement may be duly executed and delivered by facsimile or other electronic transmission.

4.4. <u>Further Assurances</u>. The Parties agree (a) to furnish upon request to each other such further information, (b) to execute and deliver to each other such other documents, and (c) to do such other acts and things, all as any other Party may reasonably request for the purpose of carrying out the intent of this Agreement and the transactions contemplated by this Agreement.

4.5. <u>Arm's Length Negotiations: Counsel for Brentwood</u>  The Noteholder expressly represents and warrants to Brentwood that (a) before executing this Agreement, the Noteholder has fully informed himself or itself of the terms, contents, conditions and effects of this Agreement; (b) the Noteholder has relied solely and completely upon his, her or its own judgment in executing this Agreement; (c) the Noteholder has had the opportunity to seek the advice of his, her or its own legal counsel and financial and tax advisors before executing this Agreement; (d) the Noteholder has acted voluntarily and of his, her or its own free will in executing this Agreement; (e) the Noteholder is not acting under duress, whether economic or physical, in executing this Agreement; (f) this Agreement is the result of arm's length negotiations conducted by and among the Parties; and (g) the Noteholder acknowledges that the law firm of Marcus Clegg of Portland, Maine has been retained by Brentwood to prepare this Agreement as legal counsel for Brentwood, that neither Marcus Clegg nor any of its members represent the Noteholder in connection with the preparation or execution of this Agreement, and that neither Marcus Clegg nor any of its members has given any legal, investment or tax advice to the Noteholder regarding this Agreement. To the extent applicable, Marcus Clegg is expressly intended as a beneficiary of the representations and warranties of the Noteholder contained herein.

4.6. <u>Confidential Material Non-Public Information</u>. The United States securities laws prohibit any person who has received from an issuer material, non-public information, including the information that is the subject matter of this Agreement and the other Transaction Documents, from purchasing or selling securities of the issuer or from communicating such information to any other person under circumstances in which it is reasonably foreseeable that such person is likely to purchase or sell securities. The undersigned Noteholder agrees to keep and hold all such material, non-public information in strict confidence and trust and not to use or disclose any such material, non-public information.

4.7. <u>Notices</u>. Any notice herein required or permitted to be given shall be in writing and may be personally served or delivered by nationally-recognized overnight courier by email or by confirmed facsimile, and shall be deemed given and effective on the earliest of (a) the date of transmission if such notice or communication is delivered by email or fax prior to 5:30 p.m. (Eastern Time) on a Business Day, (b) the next Business Day after the date of transmission if such notice or communication is delivered via email or facsimile on a day that is not a Business Day or later than 5:30 p.m. (Eastern Time) on a Business Day, or (c) upon actual receipt by the Party to whom such notice is required to be given. The addresses for such communications shall be:

If to Brentwood:    Brentwood Investments
                    5036 Dr. Phillips Blvd #314

Orlando, FL 32819

If to the Noteholder, to such address set forth under the Noteholder's name on the Signature Page executed by the Noteholder. Each Party shall provide notice to the other parties of any change in address in the manner set forth in this Section.

4.8. <u>Headings</u>. The headings of this Agreement are for convenience of reference and shall not form part of, or affect the interpretation of, this Agreement.

4.9. <u>Severability</u>. If any provision of this Agreement shall be invalid or unenforceable in any jurisdiction, such invalidity or unenforceability shall not affect the validity or enforceability of the remainder of this Agreement or the validity or enforceability of this Agreement in any other jurisdiction.

4.10. <u>Joinder to Company Agreement</u>. By execution of this Agreement and upon acceptance thereof by Brentwood, the Noteholder acknowledges and agrees that the Units acquired by the Noteholder shall be governed by the terms of the Company Agreement and agrees to be bound by all of the terms and conditions, covenants and obligations of the Company Agreement applicable thereof to holders of Units in general.

*(Signature Page Follows)*

CONFIDENTIAL TREATMENT REQUESTED
EXEMPT FROM FOIA

In-Re-Mozido (B3044)_SEC _007_ 009925

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the date first above written.

**BRENTWOOD INVESTMENTS, LLC**

By: _____

Name: ___Michael A. Liberty_____

Its: Manager

**NOTEHOLDER**

**Name of Noteholder (Print):** William F. Rueger, Jr.

By: _____

Its: _____

Address of the Noteholder:

CONFIDENTIAL TREATMENT REQUESTED
EXEMPT FROM FOIA

In-Re-Mozido (B3044)_SEC _007_ 009926

<u>SCHEDULE 1</u>

| <u>Noteholder Name</u> | <u>Principal Amount of Note(s)</u> |
|---|---|
| William F. Rueger, Jr. | 55,000.00 |

CONFIDENTIAL TREATMENT REQUESTED
EXEMPT FROM FOIA

In-Re-Mozido (B3044)_SEC _007_ 009927

## SCHEDULE II

## MDO, LLC
## JOINDER TO
## AMENDED AND RESTATED
## LIMITED LIABILITY COMPANY AGREEMENT
## DATED AS OF AUGUST 27, 2010, AS AMENDED

### JOINDER

Joinder, dated as of 12/7/16, 2016 by William F. Rueger, Jr. ("New Member").

Reference is made to the Amended and Restated Limited Liability Company Agreement dated as of August 27, 2010, as amended, of MDO, LLC, formerly known as Mozido, LLC (the "Agreement").

WHEREAS, New Member is entitled to receive Preferred Membership Units in MDO, LLC pursuant to conversion of certain convertible promissory notes, and wishes to receive such Units and be bound by the Agreement;

NOW, THEREFORE, in consideration of the foregoing premises and for other good and valuable consideration, by executing this Joinder:

New Member hereby agrees to be bound by the terms of the Agreement as if it were an original signatory to the Agreement and shall be deemed to be a Preferred Member under the Agreement.

IN WITNESS WHEREOF, the New Member has executed this Joinder as of the date first above written.

**Name of New Member (Print):** William F. Rueger, Jr.

By: *[signature: William F. Rueger, Jr.]*

Its: _____

CONFIDENTIAL TREATMENT REQUESTED
EXEMPT FROM FOIA

In-Re-Mozido (B3044)_SEC _007_ 009928

# Signature Certificate

 Document Reference:   JHZMIKJEM4TEYUBMVVNBVI



RightSignature
Easy Online Document Signing



William F, Rueger, Jr.
Party ID: G4GIUJJBRIYEVZ8D4AAZ62
IP Address: 68.132.79.40
VERIFIED EMAIL:  ruegermc@verizon.net

Electronic Signature:



Multi-Factor
Digital Fingerprint Checksum   c133630740eb8b9542cd16043b84a28f8d421df4

| Timestamp | Audit |
|---|---|
| 2016-12-07 10:59:33 -0800 | All parties have signed document. Signed copies sent to: Brentwood and William F, Rueger, Jr.. |
| 2016-12-07 10:59:32 -0800 | Document signed by William F, Rueger, Jr. (ruegermc@verizon.net) with drawn signature. - 68.132.79.40 |
| 2016-12-07 10:59:31 -0800 | William F, Rueger, Jr. verified email address 'ruegermc@verizon.net'. - 68.132.79.40 |
| 2016-12-07 10:58:29 -0800 | Generated Document from Online Form Brentwood Investments Conversion Subscription Agreement and Joinder (Brentwood-Investm-7e6321). - 68.132.79.40 |
| 2016-12-07 10:43:43 -0800 | Online Form viewed by William F, Rueger, Jr. (ruegermc@verizon.net). - 68.132.79.40 |



This signature page provides a record of the online activity executing this contract.

Page 1 of 1

CONFIDENTIAL TREATMENT REQUESTED
EXEMPT FROM FOIA

In-Re-Mozido (B3044)_SEC _007_ 009929